```
               UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF NEW YORK
_____
                                           )
In re:                                     )
                                           )
KRAMER v. IQBAL, et al          CH: 7      )    1-11-01539-ess
                                           )
S.M. TRANSPORTATION, LTD.                  )    1-10-43746-ess
                                           )
[1] ADJOURNED PRE-TRIAL CONFERENCE RE:     )
    COMPLAINT                              )
                                           )
    ADJOURNED FROM: 2/16/12 3/15/12        )
    4/24/12 5/24/12 5/30/12 7/19/12        )
    9/28/12 11/20/12 1/22/2013             )
_____)

_____
                                           )
In re:                                     )
                                           )
KRAMER v. IQBAL, et al          CH: 7      )    1-11-01539-ess
                                           )
S.M. TRANSPORTATION, LTD.                  )    1-10-43746-ess
                                           )
[6] MOTION FOR DEFAULT JUDGMENT FILED      )
BY FRED S KANTROW ON BEHALF OF DEBRA       )
KRAMER                                     )
_____)
```

                            U.S. Bankruptcy Court
                            271 Cadman Plaza East Suite 1595
                            Brooklyn, New York 11201

                            March 5, 2013
                            2:33 p.m.

     BEFORE THE HONORABLE ELIZABETH S. STONG, Judge

APPEARANCES:

For the Trustee:            Avrum J. Rosen
                            THE LAW OFFICES OF
                            AVRUM J. ROSEN, PLLC
                            38 New Street
                            Huntington, NY 11743

Pro Se Debtor:              Shakil Iqbal

```
APPEARANCES:   (Continued)

Also Present:                 Karamir Dahiya
                              DAHIYA LAW OFFICES LLC
                              325 Broadway Room 304
                              New York, NY 10007
```

Proceedings recorded by electronic sound technician; transcript produced by AVTranz.

1        THE CLERK:  Numbers 29 and 30 on the calendar.
2   Kramer versus Iqbal, et al.  SM Transportation Limited, adjourn
3   pretrial conference re complaint, motion for default judgment.
4        MR. ROSEN:  Good afternoon again, Your Honor.  Avrum
5   Rosen.  Your Honor, I may have messed something up on this one
6   and I'm not sure.  Your Honor may recall that this motion for
7   default, this was on for a motion of default judgment the last
8   time.  There had been a letter submission by the Iqbals.  And
9   this is one where one of them had filed bank -- one of the
10  defendants had filed bankruptcy and I raised the due process
11  issue so we re-noticed it.
12       And what I left here for my notes I may have gotten
13  wrong.  I thought that I was remaking a motion for default
14  judgment, which we did, and putting it on for today and
15  reserving them so they would know.  And that the Court was
16  going to issue a scheduling order on it.
17       It turns out that I got a call a couple days ago from
18  your courtroom deputy saying that she thought I was supposed to
19  do the scheduling order.  And if she says I was then I was.
20       THE COURT:  Mr. Rosen --
21       MR. ROSEN:  But I didn't.
22       THE COURT:  -- if I had thought that you or I, that
23  the Court or counsel were to do that it would be one thing.
24  But if Ms. Jackson thinks it, it must be true.  The question is
25  what is the most effective way to move this forward?

1     MR. ROSEN: Right. Well, so the answer is though,
2  Your Honor, I mean I think that the scheduling order was kind
3  of in the adversary proceeding. But in any event they were
4  reserved again now with a motion for a default judgment. They
5  know that their discharge is denied. I mean the issue the last
6  time was that, you know, we thought they may have been kind of
7  -- in some kind of nether regions of space, not realizing that
8  the automatic stay terminated in their case and that this
9  matter was back on. So they never answered.

10     So I mean they've gotten all the due process required
11  by the code. That case ended. They had a brand new motion for
12  default judgment served on them again. And there was no
13  response, even though they had sent the letter in once before,
14  no response whatsoever.

15     So you know, my suggestion would be --
16     THE COURT: Yeah.
17     MR. ROSEN: -- to grant the motion and settle the
18  order and see if they respond again. I mean, there's some
19  obligation on people to respond to legal papers when they get
20  it. They know their discharge has been denied. At the very
21  least if they didn't think their discharge had been denied and
22  it was stayed, somebody somewhere would have sent me a letter
23  saying oh, Mr. Rosen, you're violating the automatic stay. But
24  nothing happened.
25     THE COURT: All right. This -- in the adversary



1  proceeding, Kramer versus Iqbal, in the bankruptcy case of SM
2  Transportation Limited we have an adjourned pretrial conference
3  in a situation where the Defendants, Maria and Shakil Iqbal
4  have filed for bankruptcy.  And a motion for default judgment
5  by the trustee noting that there's been no response in the
6  adequacy of service.
7             And with respect to their bankruptcy case what is the
8  timetable and status of that case?  I just need to piece
9  these --
10            MR. ROSEN:  If I --
11            THE COURT:  -- pieces --
12            MR. ROSEN:  If I recall correctly, hang on a second.
13  They filed bankruptcy.  We commenced a 523 and a 727 action and
14  we received a default judgment against the Iqbals denying their
15  discharge.  And then we filed -- and now we filed this motion
16  seeking a default judgment against them of the fraudulent
17  conveyances in the sum of $143,529.17.  And then there was
18  another $2,350 in unauthorized post-petition payments.
19            So that's what happened, Your Honor.  We actually
20  commenced an action against them to deny their discharge and it
21  was granted on default.  So they had notice of that.  They had
22  notice of the default judgment that they weren't granted.
23  They've got almost $145,000 of estate money and they're just
24  not responding.
25            So time is not on our side.



1           THE COURT:  No.  Is anyone here representing the
2  Defendants?
3           MR. ROSEN:  No.
4           MR. DAHIYA:  Good afternoon, Judge.  Karamir Dahiya
5  for Maria and Shakil Iqbal.  I'll be filing my notice of
6  appearance in this case today.  And --
7           THE COURT:  When were you retained, Mr. Dahiya?
8           MR. DAHIYA:  Yeah.  Just I wanted to pro bono to help
9  this gentleman.
10          THE COURT:  When were you retained?
11          MR. DAHIYA:  Today.
12          THE COURT:  Within the last hour?
13          MR. DAHIYA:  Yes.  And the gentleman needs help.  His
14 wife has got cancer with respect to the bones.  And man needs
15 help.  And I volunteered as an officer of the court.  I'll do
16 my best to service, given best possible services.
17          THE COURT:  Are you Mr. Iqbal?
18          MR. IQBAL:  Yes.
19          THE COURT:  Mr. Iqbal, thank you for coming to
20 bankruptcy court.  It's good to have you here.  You're a pro se
21 at the moment on my docket.  Defendant in a bankruptcy case
22 that raises some important issues.  And you haven't been here
23 up until now I don't think.  Because I know that if you had
24 appeared with or without counsel then the case might well be in
25 a different posture.

1      Tell me why you filed this bankruptcy?
2              MR. IQBAL: Well, it was the 9th -- I don't remember
3  the date, Your Honor. But -- I was passing through some health
4  problems in those days. And I -- you know, I'm -- because of
5  that reason that most of the time I wasn't, you know -- I was
6  going in and out of hospital. And when I got a little better
7  my wife somehow she went for a mammography and that was the
8  case right now.
9              THE COURT: Okay.
10             MR. IQBAL: Your Honor, it's bad, bad situation,
11 but --
12             THE COURT: Have you filed a bankruptcy case before?
13             MR. IQBAL: No, ma'am.
14             THE COURT: Did you get any information from a
15 lawyer, or an accountant, or any professional familiar with
16 bankruptcy in connection with filing your case?
17             MR. IQBAL: What I was decided -- what I was advised,
18 whoever was presenting I just followed.
19             THE COURT: Who was that?
20             MR. IQBAL: I get the name, Your Honor. Mr. Sheron
21 Duson (phonetic).
22             THE COURT: Okay. And -- what is your connection to
23 SM Transportation Limited?
24             MR. IQBAL: It is momma and papa's operation. Maria
25 is my wife.

1    THE COURT: Uh-huh, I see. What does it do? What is
2 the business?
3    MR. IQBAL: It's an ambulance business. It's a post
4 care system. That they go to the hospital and pick-up and drop
5 elderly or disable patients.
6    THE COURT: Is it operating presently?
7    MR. IQBAL: No, Your Honor.
8    THE COURT: When did it stop operating?
9    MR. IQBAL: That was sometime '09.
10    THE COURT: Okay. So it's been some years now.
11    MR. IQBAL: '09 or '10. I'm a little --
12    THE COURT: But more than two years ago?
13    MR. IQBAL: Two, three years.
14    THE COURT: And before you filed the bankruptcy case
15 of SM?
16    MR. IQBAL: Your Honor, the first time we filed was
17 Chapter 11. But then I was told that it's not going well. For
18 that reason I was transferred to Chapter 7.
19    THE COURT: I see the schedule -- the docket from the
20 Chapter 11 case. That was back in April of 2010. And then
21 that case ended up being converted to Chapter 7. And that's
22 the case that this adversary's been brought in with Ms. Kramer
23 as the trustee. All right.
24    MR. ROSEN: Your Honor, I note that when the
25 individual case was filed it was not filed as a related case,

1 so it went to Judge Eisenberg.

2 THE COURT: And Mr. Iqbal, you live in Suffolk
3 County?

4 MR. IQBAL: That's correct, Your Honor.

5 THE COURT: So the related case aspect causes the
6 case to come to this courthouse and be pending before me as
7 opposed to be in the Central Islip Courthouse where in general
8 cases from Suffolk County are proceeding; is that right?

9 MR. ROSEN: It wasn't, Your Honor. Their individual
10 case was in front of --

11 THE COURT: I see that.

12 MR. ROSEN: -- Judge Eisenberg. But I believe,
13 unless I'm confusing with something else, I don't think you
14 have the 7.

15 THE COURT: Of the --

16 MR. ROSEN: Individual.

17 THE COURT: Of SM Transportation?

18 MR. ROSEN: No, no. SM Transportation.

19 THE COURT: SM Transportation was my case.

20 MR. ROSEN: Right. What I was just saying to you is
21 you didn't have their individual case.

22 THE COURT: No. It was transferred here in an
23 intra-district transfer it appears. A within district transfer
24 based on the related --

25 MR. ROSEN: Right.

```
 1                THE COURT:  -- case I suspect.
 2                MR. ROSEN:  Okay.
 3                THE COURT:  And Ms. Jones was the trustee in the
 4   individual case.  Ms. Kramer's the trustee in the entity case.
 5   And only the entity case is before me presently with this
 6   motion for default judgment.  Well --
 7                MR. ROSEN:  Your Honor, can I add something?
 8                THE COURT:  Please.  It's a good thing, but also a
 9   complicated thing when at this late stage with a motion for
10   default judgment there's an appearance by the Defendant.  So we
11   need to figure out the best way to proceed, protecting
12   everybody's rights, including the trustee's rights, but also of
13   course our rights.
14                MR. ROSEN:  Your Honor, I'm going to be very blunt,
15   all right.  More blunt than usual.  Clearly Mr. Iqbal has a
16   right to get counsel.  And Mr. Dahiya will do whatever he's
17   going to do.  And I'll take him at his word that this is
18   probably fortuitous since we have another matter that's on
19   today, but there's been something of a pattern that Your
20   Honor's probably not aware of the fact that since the other
21   motion that I have against Mr. Dahiya, which we're going --
22   which is in the case which is next on the calendar, that motion
23   is not on today, has been pending before the court.
24                What Mr. Dahiya appears to be doing is getting
25   himself hired into cases wherever he can find I'm involved with
```

1  somebody to make various allegations and do various things.  So
2  he's free to -- Mr. Iqbal is free to retain whoever he wants to
3  retain clearly.  But I think under the circumstances that there
4  need to be disclosures made to him about it, because I think
5  there maybe one more -- and I said I'm being blunt, but I think
6  there may be more than one agenda going on here.

7  And if he decides to do that freely of his own will
8  because he's got pro bono counsel that's fine.  But if not, and
9  perhaps I'm completely off base here, but the fact of the
10 matter is there are other matters going on here.  And it's
11 happened in another case in front of Judge Eisenberg indirectly
12 going after me, very indirectly.  But it just -- it's happening
13 a few too many times to be a coincidence.  But that's all I
14 have to say, Your Honor.

15          MR. DAHIYA:  I seriously object to this kind of
16 venomous interjection about -- and skepticism.  I'm
17 representing this man.  I'm a lawyer that appeals for their
18 client, defend their constitutional rights, the rights to
19 access the courtrooms.  There are rights to have access to
20 justice.

21          THE COURT:  Mr. Dahiya, are you prepared for this
22 hearing?  Your client has a right to be represented by counsel
23 who is prepared.  It's my turn.

24          MR. DAHIYA:  Please do not side with him, Your Honor.
25          THE COURT:  Mr. Dahiya, I'm not siding with anyone.

1  And I respectfully --

2              MR. DAHIYA:  I am --

3              THE COURT:  -- invite you to withdraw that statement.

4              MR. DAHIYA:  Your Honor, please don't get angry with
5  me.

6              THE COURT:  I'm not angry.

7              MR. DAHIYA:  I'm defending a poor man.

8              THE COURT:  I'm concerned.

9              MR. DAHIYA:  He's -- I'm concerned about his health.
10 I'm concerned about the man has no representation.

11             THE COURT:  Mr. Dahiya, I denied your request to
12 appear telephonically this afternoon.

13             MR. DAHIYA:  Yes, Your Honor.

14             THE COURT:  You would not have even been in this
15 courtroom --

16             MR. DAHIYA:  That's true, Your Honor.

17             THE COURT:  -- had I permitted you to do what you
18 wished to do, which was not come to court this afternoon.
19 Please be seated.

20             MR. DAHIYA:  I will be --

21             THE COURT:  Mr. Iqbal, you're in a difficult spot
22 here because you're a defendant in a case where no answer's
23 been filed.  It's very important when you're defending a case
24 to have counsel represent you.  Counsel of your choice.  Not
25 necessarily counsel of the moment, but counsel of your choice.

1      Now it may be that you will need help in making a
2 good decision about hiring counsel. And it may be that you
3 will hire Mr. Dahiya, or another lawyer, or a lawyer to whom
4 you are referred from a Bar Association. It can often be
5 helpful to go to a Bar Association to get a referral.
6      But my concern is fairness to all of the parties.
7 And proceeding in the best way to be sure that due process in
8 the first instance and justice in the end is done in the case
9 that's been brought here.
10      So it's actually fairly simple. I want you to have
11 an opportunity. First of all, thank you for coming in.
12 Because I can't make this record or advise you of these things
13 if you're not here. So there is really nothing more important
14 than the fact that you decided to come to court today. And I'm
15 very glad you did. It lets us get to work on the issues in the
16 case.
17      Now I have before me a motion for default judgment.
18 Do you know what that means? It means you haven't answered.
19 And so that means you're in default. And if there is no answer
20 there's no other side of the story before me. There's no
21 admitting or denying any of the elements of the complaint.
22 There's no opportunity to see what facts are contested and what
23 facts are uncontested. And it's much more difficult to
24 determine whether the complaint on its face states a claim.
25      But now that you're participating in the case all of

1  that will become much easier.

2         Now you've heard references which may not have been
3  entirely clear to the next matter on the calendar.  And it is a
4  matter of public record that on my court calendar today, which
5  has a little over 30 items, the following matter is a pretrial
6  conference in a case where Mr. Rosen represents a different
7  trustee.  And Mr. Dahiya represents a defendant whose name is
8  Mahia.  And in that case there has been a motion made seeking
9  some sanctions again Mr. Dahiya for claims that were brought
10 and then dropped by him.  Actually, brought by him and dropped
11 by another lawyer who came in to represent the same person.

12         It's all a matter of public record and I think I'm
13 stating it quite neutrally.  But here's the point.  Deciding
14 who should represent you is a big deal.  And you should do it
15 not on the moment, but on the basis of thinking about who the
16 right lawyer is.  I often, and other judges often refer people
17 to the Bar Association.  The Brooklyn Bar Association is a five
18 minute walk from here.  It's at 123 Remsen Street.

19         The -- are you in Nassau or Suffolk?

20         MR. IQBAL:  In Suffolk, Your Honor.

21         THE COURT:  Suffolk.  There's a Suffolk County Bar
22 Association.  And it may be that you will decide to hire
23 Mr. Dahiya.  You may decide to hire someone else.  And you're
24 entitled to continue representing yourself.

25         MR. DAHIYA:  I will get in touch with the Bar to get

1  him a good lawyer, Your Honor.  See if I can get him someone.

2              THE COURT:  At the moment you're pro se because

3  there's no attorney on the docket for you.  Mr. Dahiya has

4  indicated making what sometimes is called a special appearance

5  right now, but the most important thing is that whatever your

6  claims and defenses are.  Whatever your needs for advice from a

7  lawyer are that those needs are met if they possibly can be.

8              And hopefully we'd all agree to that.  We are -- the

9  lawyers in the room are all members.  And I as the judge, I was

10 a lawyer too.  You know, we have duties as professionals to the

11 system.  Lawyers who appear in this courtroom have duties to

12 the federal court.  They have duties to each other.

13             In fact, our court has written these down in what are

14 called civility guidelines saying, here's what we expect.

15 Here's what you can expect of me and my colleagues.  Here's

16 what you can expect of the lawyers who represent you, and the

17 lawyers who represent the people are -- who have filed an

18 action against you.  And those aren't people who are against

19 you, but they are lawyers who represent clients who have

20 asserted a claim.  Trustees have jobs.  So do debtors.

21             So that's where we are for today.  I'm not going to

22 consider the motion on the merits today.  I'm going to adjourn

23 it for about a month.  Maybe a little longer.

24             MR. ROSEN:  Your Honor --

25             THE COURT:  We will provide you with information

1   about those two par associations.  And you need to make a good
2   decision about -- and talk to your family about how you want to
3   proceed with representation.
4               MR. ROSEN:  Your Honor, I fully understand that
5   having appeared they would be given an opportunity.  What I
6   would suggest for timing purposes is if we could set a date for
7   the file -- if we could kick this out to the April 25th date.
8               THE COURT:  That's a good -- that's an appropriate
9   amount of time I think.
10              MR. ROSEN:  All right.  And to have an answer filed
11  say within 30 days from today.  That gives him like a fresh
12  start as if he were served today and would have the normal time
13  to go out and get someone.  That gives him the time to get --
14  to file an answer.
15              THE COURT:  I think this makes sense.  Here's what
16  I'm going to do.
17              MR. ROSEN:  And because, Your Honor, just remember,
18  this is our last issue in this case and it's holding up the
19  distribution.  So I don't want to keep it too open-ended.
20              THE COURT:  So the time to respond to the complaint
21  will be extended to April 4th, that's 30 days.  We'll have a
22  continued pretrial conference and hearing on the motion for
23  default if there's an answer.  There's a response to the
24  complaint, but that will be the end of the motion for default.
25  If there's no response I'll have to take that motion up.

```
 1            April 25th at 2:00.
 2            MR. ROSEN:  And of course before that time, Your
 3   Honor, counsel, whomever they may end up being, is welcome to
 4   contact me and --
 5            THE COURT:  They should.  Whoever it is.
 6            MR. ROSEN:  -- we'll be happy to have a discussion.
 7            THE COURT:  Whether it's Mr. Dahiya or someone else
 8   they should be promptly in touch with the Trustee.  It
 9   sometimes happens that when the trustee is toward the end of
10   the road of managing a case there's been a pattern established
11   for what sensible settlements are in a case.  I don't know -- I
12   have no view as to whether this is a case that should be
13   settled.  It may be that you've got very useful information to
14   the Trustee that will persuade the Trustee.  There's really
15   nothing to be done here.  It maybe that this will turn out to
16   be an important case.
17            We don't know that yet, because you were missing from
18   the picture.  But you're not missing anymore.  So we can get to
19   work on all those things first and foremost among the parties.
20   Ideally with a lawyer to help you.  A lawyer of your choice,
21   who you hire after thinking about who's the right lawyer for
22   you.  And that may turn out to be Mr. Dahiya.  And maybe he can
23   help you find good resources to find good lawyers.  He's
24   familiar with the Bar Associations, as is Mr. Rosen.  The Court
25   certainly is as well.  We'll give you contact information for
```

1  the Brooklyn Bar and the Suffolk County Bar.

2          Don't you think we can do that?  We have it printed
3  out already actually.  All right.  I think that's a good way to
4  proceed.

5          Mr. Dahiya, anything to add?

6          MR. DAHIYA:  No.  Just I would see if he can find a
7  pro bono.  The family has no money, Your Honor.  And if it
8  could happen, the Brooklyn --

9          THE COURT:  Both of the Bar Associations I've
10 referred to make pro bono referrals.

11         MR. DAHIYA:  I'll see if I can get into a bigger --
12 big size firm.  They will have more knowledge about this fine
13 complex issues of embezzlement as of -- I think issues will
14 come down to the merits, Your Honor.

15         THE COURT:  They should.

16         MR. DAHIYA:  So I will --

17         THE COURT:  Merits should have -- the issues should
18 come down to the merits.

19         MR. DAHIYA:  I might get in touch with NYU School of
20 Law --

21         THE COURT:  Well, I encourage you to consider
22 reaching out to the Bar Associations --

23         MR. DAHIYA:  Yeah.  I'll do that.

24         THE COURT:  -- and their pro bono programs,
25 Mr. Iqbal, including the volunteer lawyers project at the

1  Brooklyn Bar and the referral projects that are at the Suffolk
2  County.  But I don't know if the Nassau County Bar is
3  restricted.  It will be difficult for a lawyer from Suffolk
4  perhaps.  I wonder if the case -- should this case be here?  I
5  guess it is because it's related to SM.
6              All right.  So that -- those will be our next steps.
7  Mr. Rosen, anything to add?
8              MR. ROSEN:  No, Your Honor.
9              THE COURT:  Mr. Iqbal, any questions about what we're
10 doing here?
11             MR. IQBAL:  Are you asking me, Your Honor?
12             THE COURT:  I'm asking if you have any questions?
13             MR. IQBAL:  No.
14             THE COURT:  I'm not promising I'll know the answer,
15 or be able to answer, because conventionally it would be more
16 that the judge would ask the questions and the parties and the
17 lawyers would answer, but if there's something I can do to help
18 this process move forward that's in everybody's interest, all
19 right.
20             We will issue a scheduling order that puts on paper
21 the date with respect to the time to respond to the complaint.
22 That will be helpful when you talk to perspective lawyers
23 because they'll want to make sure, they'll look at this and
24 they'll say, there's a default.  And you'll show that they have
25 until April 4th to get an answer or response on file.  That'll

1 be helpful.  Maybe we can print the docket too, all right.

2         Okay.  Anything further?  Let's call the next matter.

3 Thank you very much.  Mr. Iqbal, thank you for coming in.

4         MR. ROSEN:  Thank you, Your Honor.

5    (Proceedings Concluded)

6

7

8    I certify that the foregoing is a correct transcript from

9 the record of proceedings in the above-entitled matter.

10

11 Dated: <u>March 12, 2013</u>        _____

                                                AVTranz, Inc.

12                                                 845 North 3rd Avenue

                                                Phoenix, AZ  85003

13

14

15

16

17

18

19

20

21

22

23

24

25